UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STAVROS PAPANTONIADIS,<br>a/k/a "Steve Papantoniadis,"<br><br>Defendant | Criminal No.  24cr10084<br><br>Violations:<br><br>Counts One and Two: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Wire Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. Defendant STAVROS PAPANTONIADIS, a/k/a "Steve Papantoniadis," was a resident of the District of Massachusetts.

2. Through various corporate entities, PAPANTONIADIS owned and controlled a group of pizzerias located in the District of Massachusetts (collectively, "Stash's Pizzerias").

3. 1225 North Main St LLC was a Massachusetts limited liability company that PAPANTONIADIS owned and controlled.

4. Beginning on a date unknown and continuing to in or around April 2021, 1225 North Main St LLC was a company that was doing business as Boston Pizza Company of Randolph.

5. Beginning on a date unknown and continuing to in or around April 2021, Boston Pizza Company of Randolph was a PAPANTONIADIS-owned pizzeria located at 1225 North Main Street in Randolph, Massachusetts (hereinafter, the "Randolph Location").

1

6. Beginning on a date unknown and continuing to in or around April 2021, the Randolph location was one of Stash's Pizzerias.

7. In or around April 2021, PAPANTONIADIS sold the Randolph Location. On or about September 29, 2021, the Secretary of the Commonwealth of Massachusetts deemed the entity 1225 North Main St LLC cancelled.

8. The United States Small Business Administration ("SBA") was an agency of the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

9. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's Economic Injury Disaster Loan ("EIDL") program to provide loans of up to $2 million to small businesses that suffered "substantial economic injury" from COVID-19. The EIDL program required recipients to use EIDL funds only on certain business expenses, including payments of fixed business debts and payroll.

10. EIDL funds were issued directly from the United States Treasury. Applicants applied through the SBA via an online portal. The EIDL application process required applicants to provide information concerning the affected business, including the number of employees, gross revenues, and costs of goods sold in the 12 months prior to January 31, 2020, as well as information

about the business owner. Applicants electronically certified that the information provided was accurate. The SBA relied on the information provided by the applicant to determine how much money the small business was eligible to receive in the form of EIDL funds.

## The Scheme to Defraud

11. Beginning in or around April 2021, and continuing to in or around January 2022, PAPANTONIADIS devised and executed a scheme to fraudulently obtain pandemic-related relief funds, including EIDL funds, by making materially false statements to the SBA to obtain a loan through the EIDL program, and by improperly using the fraudulently obtained EIDL funds for personal and unauthorized expenses.

12. On or about November 22, 2021, PAPANTONIADIS caused an EIDL application to be submitted to the SBA on behalf of 1225 North Main St LLC, doing business as Boston Pizza Company. The application requested a loan in the amount of $986,900.00. In the application, PAPANTONIADIS represented that Boston Pizza Company was a restaurant located at 1225 North Main Street in Randolph, Massachusetts. He also represented that the restaurant then had 18 employees. At the end of the application, PAPANTONIADIS caused a box to be checked certifying "under penalty of perjury under the laws of the United States" that the information in the application was "true and correct."

13. PAPANTONIADIS falsely represented to the SBA that 1225 North Main St LLC was then an entity that ran Boston Pizza Company (i.e., the Randolph Location) and employed 18 employees. In truth and in fact, PAPANTONIADIS did not own and operate the Boston Pizza Company restaurant when he caused the EIDL application to be submitted. In or around April 2021, PAPANTONIADIS sold the Randolph Location. On or about September 29, 2021, the

Secretary of the Commonwealth of Massachusetts deemed the entity 1225 North Main St LLC cancelled. As of on or about November 22, 2021, 1225 North Main St LLC did not have 18 employees working at the Randolph Location.

14. On or about December 4, 2021, the SBA denied PAPANTONIADIS' EIDL application. However, between on or about December 4, 2021, and on or about December 28, 2021, PAPANTONIADIS and his certified public accountant, Person 1, sent documents and information to SBA personnel to cause the SBA to approve the loan. In an attempt to falsely assure the SBA that 1225 North Main St LLC was still a viable entity doing business as Boston Pizza Company, PAPANTONIADIS caused Person 1 to send the SBA, among other things, a "certificate of good standing and/or tax compliance," certifying that 1225 North Main St LLC was in compliance with its tax obligations under Chapter 62C of the Massachusetts General Laws.

15. Following PAPANTONIADIS and Person 1's submissions, on or about December 28, 2021, the SBA approved PAPANTONIADIS' application on behalf of 1225 North Main St LLC and authorized a loan in the amount of $500,000.00. On or about January 4, 2022, the United States Treasury sent PAPANTONIADIS loan proceeds in the amount of $499,900.00.

COUNT ONE
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

16.     The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 through 15 of this Indictment.

17.     Beginning in or around April 2021, and continuing to on or about January 4, 2022, in the District of Massachusetts, the District New Hampshire, and elsewhere, the defendant,

STAVROS PAPANTONIADIS,
a/k/a "Steve Papantoniadis,"

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | December 28, 2021 | EIDL Loan Authorization and Agreement on behalf of 1225 North Main St LLC, purportedly doing business as Boston Pizza Company, electronically submitted in Massachusetts to the United States Small Business Administration |
| 2 | January 4, 2022 | Electronic payment of $499,900.00 from the United States Treasury to 1225 North Main St LLC's Rockland Trust Bank account number xxxxxx0965 in Massachusetts |

All in violation of Title 18, United State Code, Section 1343.

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

1. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1343, set forth in Counts One and Two, the defendant,

STAVROS PAPANTONIADIS,
a/k/a "Steve Papantoniadis,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following asset:

    a. $499,900.00 in United States currency, to be entered in the form of a forfeiture money judgment.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    b. cannot be located upon the exercise of due diligence;

    c. has been transferred or sold to, or deposited with, a third party;

    d. has been placed beyond the jurisdiction of the Court;

    e. has been substantially diminished in value; or

    f. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON


_____
TIMOTHY E. MORAN
BRIAN A. FOGERTY
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: April 9, 2024
Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, 1:12pm
_____
DEPUTY CLERK