UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) DOCKET NO. 24-CR-10084-AK |
| | ) |
| STAVROS PAPANTONIADIS | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Stavros Papantoniadis is currently in the midst of a devastating, life changing experience. Before March 16, 2023 he owned and ran several successful pizza restaurants and was raising four children with his loving wife. Since that day, for more than two years now, he has been behind bars. He is now serving a 102-month sentence for the offense that led to his arrest. 23-cr-10089-FDS, Dkt. 189. That eight and a half year sentence is the defining fact in considering what sentence is now "sufficient, but not greater than necessary" in this separate, financial crime. The parties have considered that sentence and the amount left to serve on it, as well as the advisory guidelines range, in arriving at an agreed recommendation for the court- 24 months incarceration, with 18 months concurrent with and six months consecutive to the prior sentence. Dkt. 56. In light of the specific facts of this case, the extent to which the goals of sentencing are already accomplished by the existing sentence, and the advisory guidelines range, Mr. Papantoniadis submits that the jointly recommended sentence meets the requirement that the Court impose one that is "*minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez,* 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

1

I.      **The parties agree that the advisory guidelines recommend a sentence between 18 and 24 months.**

Mr. Papantoniadis has pled guilty to a Superseding Information that charges one count of False Statements under 18 U.S.C. § 1001. Specifically, he admitted that his statements that he owned a particular pizza restaurant and that it had 18 employees were false in an application for a loan from the Small Business Administration (SBA). Dkt. 50, ¶ 17.

The plea agreement includes the parties' agreement as to the offense level for this conduct. The base offense level for a § 1001 conviction is 6. USSG § 2B1.1(a)(1). There is then a 12-level enhancement because the amount of the loan was greater than $250,000 but less than $550,000. USSG § 2B1.1(b)(1)(G). Three points are then deducted for acceptance of responsibility, leaving a total offense level of 15. Dkt. 56, Plea Agreement, ¶ 4.

Mr. Papantoniadis has three criminal history points, placing him in Criminal History Category II. PSR ¶ Those three points all come from the 102-month sentence he is now serving. PSR ¶ 40.  Thus, in addition to all the other collateral consequences Mr. Papantoniadis has suffered from that conviction, it also figures directly into the advisory range in this case. With a total offense level of 15 and a Criminal History Category of II, the advisory range is 18-24 months. The total sentence thus recommended by the parties, 24 months, is at the high end of the agreed-upon range.

The probation department has calculated the offense level and the corresponding range slightly higher than did the parties in the plea agreement. The difference is that probation included a 14-point loss enhancement rather than 12 on the theory that the intended loss was greater than $550,000 because the original loan application was for nearly one million dollars. PSR ¶ 24. This would result in a total offense level of 17 rather than 15, PSR ¶ 32, and an advisory range of 27-33 months. PSR ¶ 92. Mr. Papantoniadis has not formally objected to

Probation's calculations, but stands by the calculation within the plea agreement and the joint recommendation under all the factors of 18 U.S.C. § 3553(a).

## II. The nature and circumstances of the offense support the recommendation that six months of the sentence be imposed consecutive to the existing sentence.

Mr. Papantoniadis submits that there are two particular aspects of his offense that support imposing only a portion of the sentence consecutively to the existing sentence. Those aspects distinguish the case from other fraudulent loan cases and are particularly relevant when considering the statutory sentencing factors of both the "nature and circumstances of the offense" and the "need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(1),(6).

In a typical pandemic loan fraud case the defendant intends the funds to be used entirely for their own personal benefit. However, in this case, Mr. Papantoniadis "used the funds to purchase another pizza business which he intended to open in the future." PSR ¶ 18; Dkt. 56, Plea Agreement, Factual Basis for Plea, p.9. Mr. Papantoniadis agrees that this use of the funds was not authorized under the terms of the loan, Id., and it does not excuse his conduct. However, the investment back into a business which he hoped would ultimately open and create jobs during the global COVID-19 pandemic is a relevant distinction from the typical case in which the loan money is used to buy goods or services solely for personal use.

A second, even greater distinction between this case and the typical fraudulent loan case is that Mr. Papantoniadis *intended to repay the loan and has in fact been doing so under the terms of the agreement*. Exhibit A, Loan Repayment Records. This additional fact of repayment shows that Mr. Papantoniadis' ultimate intent for the loan was that it would support a pizza business and that the loans would be fully repaid on time. Although he obtained funds he otherwise was not entitled to, he intended for them to support a business that would allow him to repay the loan

in full. These nature and circumstances of the offense are very different from a typical fraud case and thus justify the request to impose six months of the sentence consecutive and the rest concurrent. Should the Court adopt the joint recommendation, including the restitution amount, Mr. Papantoniadis would cease repayment of the loan directly to the SBA and instead repay it through the restitution process. Mr. Papantoniadis agrees that the jointly recommended restitution amount is correct when including interest and subtracting the amount he has repaid so far.

### III. A sentence with both concurrent and consecutive portions is appropriate in light of the statutory sentencing factors, including the long existing sentence.

Regardless of what happens in the matter at hand, Mr. Papantoniadis will be incarcerated for many more years. The prior sentence, and the collateral consequences associated with, already accomplish important statutory sentencing factors such as deterrence, just punishment, and protection of the public. 18 U.S.C. § 3553(a)(2)(A),(B),(C). The question for the Court now, is what *additional* punishment is "necessary" in this case. 18 U.S.C. § 3553(a).

In the prior case Mr. Papantoniadis was convicted at trial for an undoubtedly more serious offense. In the present case he has accepted responsibility for conduct which constituted a crime, but for which he intended to minimize the harm as addressed above. Mr. Papantoniadis submits that the joint recommendation of a partially concurrent sentence is appropriate because it supports the principle of separate punishments for separate crimes while simultaneously avoiding any unnecessary punishment.

The Sentencing Commission has fully endorsed the use of partially consecutive sentences in appropriate circumstances. USSG § 5G1.3(d). The relevant subsection requires that the decision to impose a sentence concurrently, partially concurrently, or consecutively to an undischarged term of imprisonment should be made in order "to achieve a reasonable punishment for the

4

instant offense." Id. The Commentary directs the Court to consider the § 3553(a) sentencing factors as well as the type, length, and time remaining on the undischarged sentence. USSG § 5G1.3, App. Note 4. These are exactly the factors the parties have considered in arriving at the joint recommendation of 24 months, with 18 months concurrent and six months consecutive.

In light of the very long sentence he will serve, Mr. Papantoniadis does not need to be deterred or punished, nor the public protected from him, for any more than the additional six months recommended by the parties. His life has completely changed since his arrest more than two years ago. He has been separated from his wife and four children for the first time in his life. The extensive publicity which surrounded the prior case has not only brought unwanted attention to Mr. Papantoniadis but to his children as well. PSR ¶¶ 61, 62. The harm to his children has shown Mr. Papantoniadis the great scrutiny he will be under going forward in his life, thereby deterring him as required by the law. Additional deterrence beyond the sentence recommended by the parties would be unnecessary.

Of course Mr. Papantoniadis has already been punished directly as well. He has been deprived of his liberty for more than two years. Even were he to earn the maximum of 54 days off per year for good time, he still has approximately five years remaining on the prior sentence.

During his incarceration Mr. Papantoniadis has experienced significant health problems which have not been properly treated. PSR ¶¶ 67, 68. Those problems have continued and even worsened since he was sentenced in the prior case. Id. Not surprisingly his mental health has suffered during his incarceration as well. PSR ¶ 69. Despite the great difficulty of his experience behind bars, he has been a model prisoner by refraining from any disciplinary violations and working tirelessly in the kitchen. PSR ¶ 7. All of the enormous collateral consequences he is

suffering will accomplish many of the goals of sentencing and in turn reduce the need for additional incarceration beyond the parties' recommendation.

The 18-month concurrent portion of the sentence is included within the joint recommendation to address the possibility that Mr. Papantoniadis' prior conviction is reversed on appeal. Even if that were to happen, Mr. Papantoniadis would still be required to serve the full 24-months that the parties jointly recommend here. Should the sentence in the prior case stay as is, the joint recommendation would require Mr. Papantoniadis to serve an additional six months at the conclusion of the prior case.

### IV. Conclusion.

This case presents relatively unusual circumstances. As addressed above, the parties have considered those circumstances in agreeing to the jointly recommended sentence of 24 months incarceration, with 18 months concurrent with and six months consecutive to the prior federal sentence, as well as one year of supervised release concurrent with the year imposed in the prior case. For all those reasons, the jointly recommended sentence complies with the requirements of 18 U.S.C. 3553(a) because it is "sufficient, but not greater than necessary" to achieve the goals of sentencing.

STAVROS PAPANTONIADIS
By his Attorney,

*/s/ Joshua Hanye*
Joshua Hanye, BBO#661686
Assistant Federal Public Defender
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

**Certificate of Service**

   I, Joshua R. Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: <u>March 26, 2025</u>             <u>*/s/ Joshua R. Hanye*</u>
                          Joshua R. Hanye